# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-817V

| | |
|---|---|
| EMILY BECK,<br><br>                      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br>Filed: April 21, 2025 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On June 5, 2023, Emily Beck filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on September 9, 2021. Petition at 1.

The parties dispute questions about the vaccine's administration. For the reasons discussed below, I find the flu vaccine at issue was most likely administered intramuscularly in Petitioner's left deltoid on September 9, 2021, as alleged.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.      **Relevant Procedural History**

At the initiation of the instant claim, rather than supplying a vaccine administration record Petitioner submitted a "consent agreement" form for an unidentified/undated vaccination. Ex. 1. She also filed email correspondence between herself and her employer (dated October 5-8, 2021), showing Petitioner had arranged to discuss her receipt of the subject vaccine (and her adverse reaction) with its administrator. Ex. 5.

As early as February 2024 (while this case was still in "pre-assignment review"), I noted that Petitioner had failed to submit a vaccination record, including one identifying the arm of administration. ECF No. 12 at 1. Petitioner was instructed to file a vaccine consent form to remedy this issue, or an affidavit detailing the unsuccessful efforts to obtain the records. *Id.* at 2. Petitioner thereafter filed email correspondence claiming to include an attachment of the vaccine consent form (Ex. 12), and she re-filed the October 2021 email conversation between herself, her employer, and the vaccine vendor (Ex. 13). This case was later assigned to the Special Processing Unit ("SPU"). ECF No. 15.

Respondent determined in the summer of 2024 that this matter was not appropriate for compensation. ECF No. 20. He thereafter filed his Rule 4(c) Report on September 3, 2024, arguing that Petitioner failed to provide proof of vaccination. ECF No. 21 at 5. Respondent requested I make a finding of fact as to whether Petitioner has offered sufficient evidence to prove her receipt of the covered flu vaccination. *Id.* That issue is now ripe for resolution.

II.     **Authority**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this is not an iron-clad rule. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, at *4 (Fed. Cl. Spec. Mstr. Apr. 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time but that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following evidence:

- Petitioner attests that she received the subject flu vaccine in her left deltoid on September 9, 2021, at her *workplace* – the Racine Department of Corrections. Ex. 4 ¶ 2 (emphasis added).

- On September 20, 2021 (11 days after the alleged vaccination), Petitioner contacted her primary care provider ("PCP"), reporting "her arm is in a lot of pain." Ex. 2 at 233. Specifically, she "got the flu vaccine at work a couple of weeks ago and has had 8/10 arm pain since." *Id.* Petitioner believed the vaccine "was given too high on her arm[.]" *Id.*

- Two days later (on September 22, 2021 – approximately two weeks post vaccination), Petitioner saw her PCP to follow up for "L arm pain[.]" Ex. 2 at 223. Petitioner reported that she "[h]ad [a] flu shot 2 wks [sic] ago" and has had swelling and pain with overhead movement. *Id.* Petitioner reiterated that she thought "they had given the shot quite high up." *Id.*

- On October 21, 2021, Petitioner saw another physician in her PCP's office for an unrelated ailment. Ex. 2 at 115-23. During that visit, Petitioner "did also mention [] she has been struggling with left shoulder pain since an incident with a flu shot administration at work." *Id.* at 123.

- Petitioner began physical therapy ("PT") for left shoulder pain on December 21, 2021. Ex. 3 at 36. The date of injury was listed as "09/01/2021" with an "insidious" onset. *Id.* Petitioner explained that she "had [a] flu vaccine to [her] left shoulder in September of 2021" and that the "vaccine was put into [the] left shoulder high." *Id.* She also described pain with sleeping on her left side. *Id.*

- On April 6, 2022, Petitioner had a visit with her pain management specialist whom she saw for several issues (including left shoulder pain) and noted that she "had intense pain after a flu injection." Ex. 2 at 59.

- Additionally (and as previously mentioned), Petitioner submitted a "consent agreement" for a vaccination. Ex. 1. The form does not indicate the date of the subject vaccine, the lot number, expiration date, or any other identifying information of the subject vaccination – including situs. *See generally id.*

- Petitioner filed an email correspondence between herself and her supervisor dated October 5, 2021. Ex. 5; Ex. 13. The exchange begins with

4

- Petitioner's supervisor informing her that she followed up with the provider who administered the subject vaccinations, stating "an employee who received the flu shot ended up with an adverse reaction and is reporting that the shot was not administered in the correct location on her shoulder." *See* Ex. 5 at 4; *see also* Ex. 13 at 4. Follow up emails from October 8, 2021, show Petitioner's inquiries with a third party regarding how to get in contact with the vendor, TotalWellness, who provided the staffing for the flu clinics. Ex. 5 at 1-3; Ex. 13 at 1-3.

- Petitioner submitted another email correspondence between herself and a representative from TotalWellness (the entity that allegedly provided the staffing for the flu vaccine clinics). Ex. 12. The email is dated May 12, 2023. *See id.* at 1. The TotalWellness representative appears to have attached a copy of Petitioner's flu vaccination consent form "from 2021." *Id.* The representative informed Petitioner that the consent forms were stored electronically, so the attachment "is a screenshot along with the consent language." *Id.*

- The TotalWellness representative also told Petitioner that "[t]he vaccine used at the Racine Department of Corrections on 9/9/2021 was Afluria Quadrivalent vaccine, manufactured by Seqirus. The lot number was P100355859." Ex. 12 at 1.

- Petitioner then emailed her counsel (also on May 12, 2023), stating that she spoke with the TotalWellness representative "who said that the nurse did not enter giving me the shot in their system, but they have the consent form I signed on the day of, 5 minutes before they gave me the injection (attached)." Ex. 12 at 1. While the email exhibit contains what looks like a PDF attachment entitled "EmilyBeckConsent[,]" the actual attachment (or a copy in the form of an exhibit) has not been separately filed for the record. *See id.* at 2.

Any petitioner alleging a Vaccine Act claim has one foundational evidentiary obligation: to prove that he "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

5

There are many Program cases in which direct proof of vaccine administration is missing. But when presented with sufficient preponderant *circumstantial* evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony – special masters routinely find the alleged vaccination to have occurred. *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). Of course, not every case succeeds where such direct proof is lacking. Evidence has been found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and/or the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd,* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

In this case, the medical records do not *at all* reference a specific vaccination date – a fact that is problematic given the absence of direct administration proof. Still, the records closest in time to the alleged vaccination (11- and 13-days post vaccination, respectively) describe onset of left shoulder pain following Petitioner's receipt of a flu vaccine approximately two weeks ago. *See* Ex. 2 at 233 (a September 20, 2021 report that she "got the flu vaccine at work a couple of weeks ago and has had 8/10 arm pain since."); Ex. 2 at 223 (a September 22, 2021 report that she "[h]ad [a] flu shot 2 wks [sic] ago" and shoulder symptoms since that time). More so, subsequent medical records note onset following a flu vaccine in September 2021, generally. *See* Ex. 3 at 36 (a December 21, 2021 PT note that she "had flu vaccine to left shoulder in September of 2021"). Despite some ambiguity, in each instance, Petitioner reported the onset of her pain following her receipt of a flu vaccine – a factor that supports Petitioner's allegations. *See also* Ex. 2 at 59.

Petitioner's records otherwise reflect a consistent course of events. For instance, the medical records show Petitioner – in nearly every post-vaccination encounter – described the onset of shoulder pain following her receipt of a flu vaccine *at work*, which she thought was administered incorrectly (too high up on her shoulder). Ex. 2 at 233 (noting on September 20, 2021, that she "got the flu vaccine at work" and she thought it "was given too high on her arm"); Ex. 2 at 223 (noting on September 22, 2021, that she thought "they had given the shot quite high up."); Ex. 2 at 123 (noting on October 21, 2021, that she had been "struggling with left shoulder pain since an incident with a flu shot administration at work"); Ex. 3 at 36 (noting on December 21, 2021, that she "had flu vaccine to left shoulder in September of 2021" and that the "vaccine was put into left shoulder high."). Such consistent record entries further supports Petitioner's allegations.

Notably, Petitioner did not in this case submit a workers' compensation claim despite her receiving the subject vaccination at work. *See,* e.g., ECF No. 19 (Petitioner's status report confirming she did not receive workers' compensation benefits). I will not speculate as to the reason for her decision to forego this course of action. But its absence makes resolution of this question more difficult. *Prescott v. Sec'y of Health & Hum. Servs.,* No. 21-2005V, 2024 WL 1366402 (Fed. Cl. Spec. Mstr. Feb. 29, 2024) (relying on evidence that the petitioner's employer did not contest the workers' compensation claim documenting the alleged date of vaccination and actually referred the petitioner for treatment as a result of the vaccine injury to establish a reasonable belief that the petitioner received the subject vaccine on the date in question).

Nevertheless, the contemporaneous medical records, paired with the October 2021 email communications and the May 2023 vaccination information (supplied by the vaccine vendor, TotalWellness), support proof of vaccination in this case – albeit barely. While it would have been preferable for Petitioner to have provided the actual attachment of the vaccine consent form allegedly attached to the May 12, 2023 email communication, the circumstantial evidence submitted tips the scale ever so slightly in favor of Petitioner here. Petitioner has provided preponderant evidence establishing that she received a flu vaccine intramuscularly in her left deltoid on September 9, 2021, as alleged.

### IV. Scheduling Order

In light of my findings regarding proof of vaccination, Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent.

**Accordingly, by no later than <u>Wednesday, May 21, 2025</u>**, the parties shall file a joint status report concerning the status of Petitioner's damages demand and, if appropriate, stating whether and when Respondent would like to file an amended Rule 4(c) Report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master